IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | CRIMINAL NUMBER H-19-469-02 |
| v. | § | (CIVIL ACTION NO. H-24-2522) |
| | § | |
| DENNIS ALFREDO ESCOBAR, | § | |
| | § | |
| Defendant-Petitioner. | § | |

**MEMORANDUM OPINION AND ORDER**

Dennis Alfredo Escobar ("Petitioner") pleaded guilty in December of 2021 to Conspiracy to Possess with Intent to Distribute Cocaine.[1] The court sentenced Petitioner to 150 months in custody.[2] Pending before the court are Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("Petitioner's § 2255 Motion") (Docket Entry No. 170) and the United States' Motion for Summary Judgment and Response ("Government's MSJ") (Docket Entry No. 181). For the reasons stated below, Petitioner's § 2255 Motion will be denied, and the Government's MSJ will be granted.

---

[1] Plea Agreement, Docket Entry No. 102, p. 1 ¶ 1. All page numbers reference the pagination printed at the top of the page by the court's Electronic Case Filing system.

[2] Judgment in a Criminal Case, Docket Entry No. 143, p. 2.

## I. Background

On March 12, 2020, the Government filed a Superseding Indictment, which charged Petitioner with Conspiracy to Possess with Intent to Distribute a Controlled Substance Resulting in Death in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C); and Distribution of a Controlled Substance Resulting in Death in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2.[3] The Superseding Indictment alleged that the use of a controlled substance distributed by Petitioner caused a death.[4]

On December 8, 2021, the Government filed a Superseding Criminal Information ("the Information") charging Petitioner with Conspiracy to Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A).[5] On December 22, 2021, Petitioner appeared for rearraignment and declared his intent to plead guilty to the Information pursuant to a Plea Agreement.[6]

Before accepting Petitioner's guilty plea, the court informed Petitioner that "[i]t is very important that you listen carefully

---

[3]Superseding Indictment, Docket Entry No. 24, pp. 1-2.

[4]Id.

[5]Information, Docket Entry No. 96.

[6]Transcript of Proceedings Before the Honorable Sim Lake Rearraignment ("Rearraignment Transcript"), Docket Entry No. 160, p. 3 lines 24-25, p. 4 lines 1-6; Plea Agreement, Docket Entry No. 102.

to all of my questions and that you answer all of my questions truthfully and completely" because Petitioner "could be charged with a separate crime of perjury" for an untrue answer and because the court must make findings based on Petitioner's answers to accept his guilty plea.[7] Petitioner confirmed that he understood.[8]

The court admonished Defendant regarding "the importance of providing truthful and complete answers":

> Sometimes after a Defendant has been sentenced, he will file a motion or will write the Court a letter stating that the facts he stated at his rearraignment were not true or were not complete.
>
> I want you to understand that I'm going to rely not only today but at all times in the future on the answers you give me today. If you should ever in the future tell me something different from what you have told me today, I will disregard the future statement and rely on what you have told me today.[9]

Petitioner confirmed that he understood.[10]

Petitioner stated that he had talked with his lawyer Mike DeGeurin ("DeGeurin Sr.") about the case "more than eight times."[11] Petitioner confirmed that DeGeurin Sr. discussed with him the charges and what the Government would have to prove, that DeGeurin Sr. reviewed the Government's evidence with him, that

---

[7] Rearraignment Transcript, Docket Entry No. 160, p. 7 lines 22-25, p. 8 lines 1-2, 5-9.

[8] Id. at 8 lines 3-4, 10-11.

[9] Id. lines 19-25, p. 9 lines 1-5.

[10] Id. at 9 lines 6-7.

[11] Id. lines 8-10.

DeGeurin Sr. answered all of Petitioner's questions, that he was fully satisfied with DeGeurin Sr.'s counsel, and that DeGeurin Sr. did everything that Petitioner asked him to do.[12] The court specifically confirmed that Petitioner had reviewed the Plea Agreement and took a recess so that Petitioner could further review it with DeGeurin Sr. before pleading guilty.[13]

The court stated that the minimum sentence that Defendant faced was ten years in prison and that the maximum sentence was life in prison.[14] Petitioner confirmed that he understood.[15]

The court warned Petitioner at length that his sentence was not determined:

> The Court has not made any decision about what your sentence will be. If I accept your guilty plea, a probation officer will interview you, investigate the facts of the case, and prepare a presentence investigation report.
>
> You will have an opportunity to read the report and to discuss the report with your lawyer before your sentencing. You or the Government may file objections to the presentence report. At the time of your sentencing, I will rule on any objections; and I will then determine your advisory guideline range and your sentence.
>
> What you need to understand today is that the process of determining your sentence has not yet begun. <u>That means no one knows what advisory guideline range the probation officer will recommend or what advisory</u>

---

[12] <u>Id.</u> lines 11-25, p. 10 line 1.

[13] <u>Id.</u> at 10 lines 10-17.

[14] <u>Id.</u> at 13 lines 15-17.

[15] <u>Id.</u> lines 20-21.

<u>guideline range the Court will find applicable or what sentence the Court will impose.</u>[16]

Petitioner confirmed that he understood.[17] The court likewise warned Petitioner that he would not be able to withdraw his guilty plea based on a higher-than-expected sentence:

> If the sentence that the Court imposes is greater than the sentence that you now expect or greater than the sentence that your lawyer or anyone else may have predicted, you will be bound by your guilty plea today regardless of your sentence.
>
> You will not be allowed to change your mind and withdraw your guilty plea because you're not satisfied with your sentence.[18]

Petitioner confirmed that he understood.[19] After going over the Plea Agreement, the court asked:

> THE COURT: Has the Government made any promises to you that are not contained in that written agreement?
>
> THE DEFENDANT: No, your Honor.
>
> THE COURT: Has the Government told you what sentence you will receive if you plead guilty?
>
> THE DEFENDANT: No, your Honor.
>
> THE COURT: Has your lawyer or anyone else told you what sentence you will receive if you plead guilty?
>
> THE DEFENDANT: No, your Honor.[20]

---

[16] Id. at 14 lines 8-23 (emphasis added).

[17] Id. lines 24-25.

[18] Id. at 15 lines 1-8.

[19] Id. lines 9-10.

[20] Id. at 17 lines 4-12.

Petitioner confirmed that he had committed the conduct described in the Plea Agreement's factual basis, and Petitioner entered a plea of guilty to the Information.[21] The court later sentenced Petitioner to 150 months in custody.[22]

Petitioner appealed, and his appellate counsel filed an Anders brief based on his assessment that Petitioner's appeal presented no nonfrivolous issues.[23] See Anders v. California, 87 S. Ct. 1396 (1967). The Fifth Circuit agreed and dismissed Petitioner's appeal.[24]

Petitioner timely filed his § 2255 Motion on June 28, 2024, along with a supporting brief titled Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Petitioner's § 2255 Brief").[25] Petitioner presents one ground for relief:

> TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE OFF-RECORD GUILTY PLEA NEGOTIATION PROCESS BY MISLEADING PETITIONER AND THIRD PARTY WITNESS THAT THE GUILTY PLEA ENTERED ENTAILED A SENTENCE OF 7-9 YEARS, LEADING TO THE ENTERING OF AN UNKNOWING, INVOLUNTARY, AND INVALID PLEA AND WAIVER[.][26]

---

[21]Id. at 18 lines 18-25, p. 19 line 1.

[22]Judgment in a Criminal Case, Docket Entry No. 143, p. 2.

[23]Opinion of the Fifth Circuit, Docket Entry No. 169, pp. 1-2.

[24]Id. at 2.

[25]Petitioner's § 2255 Motion, Docket Entry No. 170; Petitioner's § 2255 Brief, Docket Entry No. 171, p. 1.

[26]Petitioner's § 2255 Motion, Docket Entry No. 170, p. 3 ¶ 12.

In support, Petitioner alleges in relevant part:

> 3. Petitioner retained the services of attorney [DeGeurin Sr.] . . . DeGeurin Sr. enlisted his son, George Michael DeGeurin, Jr. ("DeGeurin Jr.") to consult and advise Petitioner.
>
> * * *
>
> 7. In a subsequent video call, Petitioner's lawyer told him that they had spoken to the AUSA and the Government was willing [to] dismiss the initial indictment and allow Petitioner to plead to an information, because the Government realized that the overdose victim was buying drugs from different sources, and was in agreeance to a sentence of 7-9 years, in exchange for Petitioner's cooperation against Steve Onyema ("Onyema") and a friend of his, who were [dark web] drug sellers. . . . The DeGeurin's told Petitioner that it was simply best to plead guilty and cooperate, where the likely sentence would be a sentence under the mandatory minimum, 7-9 years. Faced with this option, Petitioner agreed to enter the plea and cooperate, and went before a grand jury and gave damaging evidence against Onyema, where Petitioner testified that he sold Onyema 5-7 kilograms of cocaine and that Onyema and his friend were selling fake pills, carfentanil and hydrocodone on the [dark web]. Petitioner also testified that Onyema provided him with the login information to access the [dark web] and that he never used it.
>
> 8. On December 22, 2021, the morning of the entry of the guilty plea, Petitioner spoke to Mr. DeGeurin upon entering the courtroom, about the likely sentence, and Mr. DeGeurin reiterated the previous discussion, saying Petitioner would receive a sentence of 7-9 years, because he had spoken to the prosecutor, who was in favor of the sentence based on his cooperation. Mr. DeGeurin told Petitioner that "everything would be alright", and that he merely had to go along with the judge's plea colloquy. Moreover, prior to the commencement of court, Petitioner's fiancé, Elizabeth Zastrow, spoke to Mr. DeGeurin outside the Courtroom about the entry of the plea proceedings, and counsel said that the sentence would be a sentence of 7-9 years, because he had cooperated, and if Petitioner did not agree to accept the plea agreement, the government was going to reindict Petitioner on the original charge and add in the overdose

death . . . and if Petitioner proceeded to trial and were found guilty, the certain sentence would be life imprisonment.[27]

Petitioner's § 2255 Brief attaches his own affidavit, which restates his allegations, and an Affidavit of Elizabeth Zastrow, which restates Petitioner's allegation that one of the Degeurins told Ms. Zastrow just before rearraignment that Petitioner would receive a sentence of 7-9 years.[28]

The court ordered DeGeurin Jr. to submit an affidavit addressing Petitioner's allegations of ineffective assistance of counsel.[29] DeGeurin Jr. submitted an affidavit stating in relevant part:

> I am familiar with [Petitioner]'s case. I spent many hours reviewing discovery, meeting with [Petitioner] in custody and on video conferences, meeting with Ms. Zastrow and I participated in the plea negotiations. Never did [DeGeurin Sr.] nor I ever promise a particular sentence to [Petitioner] or Ms. Zastrow.
>
> In twenty years of practicing with [DeGeurin Sr.], except when discussing a Rule 11(c)(1)(C) [plea], never would he ever promise or commit to a sentence. He would explain the sentencing guideline, he would explain how the sentencing guidelines were affected by the statutory minimums and maximums, and how 18 U.S.C. 3553 factors could affect a sentence. He would explain that the Judge has the ultimate judgment on the sentence [and] that any calculations by the lawyers both the AUSA and

---

[27]Petitioner's § 2255 Brief, Docket Entry No. 171, pp. 2-5.

[28]Affidavit of Dennis Alfredo Escobar ("Petitioner's Aff."), Exhibit 1 to Petitioner's § 2255 Brief, Docket Entry No. 171, pp. 17-19 ¶¶ 2, 7-8; Affidavit of Elizabeth Zastrow ("Zastrow's Aff."), Exhibit 2 to Petitioner's § 2255 Brief, Docket Entry No. 171, p. 23 ¶ 2.

[29]Order for Affidavits of Counsel, Docket Entry No. 176.

defense were only recommendations and that the Court could sentence above or below the guidelines. He would also explain that in a case where the defendant was going to cooperate that the AUSA could ask for a departure from the guidelines, but it was the Judge and only the Judge that would make the determination of sentence.

In this case, I participated in multiple discussions with [Petitioner] and [DeGeurin Sr.] about pleas agreements, guidelines, 5K1.1 and potential Rule 35 motions. Particularly in this case, [Petitioner] was initially indicted in a case that had a statutory mandatory minimum of 20 years with a potential of an enhancement to an automatic life sentence. To avoid potential statutory minimums and to avoid cross references to the death of Mr. Pagett, the parties negotiated a new information totally separate from the original indictment, with an agreement that the original indictment would be dismissed upon plea to the information. The information had a statutory minimum of 10 years. [Petitioner] agreed to cooperate with the government to give information relating to the case. There is an un-arrested co-defendant, Steve Onyema, and [Petitioner] agreed to testify against him. It was discussed with [Petitioner] that the government had agreed to file a 5K1.1 and would consider a Rule 35 if, Mr. Onyema was ever brought back to the United States and prosecuted.[30]

On December 2, 2024, the Government responded to Petitioner's § 2255 Motion and moved for summary judgment.[31] The Government argues that Petitioner's claim — an ineffective assistance of counsel claim — is inadequately supported and refuted by the record.[32] Petitioner responded to the Government's MSJ, arguing that his affidavits raise a genuine factual dispute regarding

---

[30]Affidavit ("DeGeurin Jr.'s Aff."), Docket Entry No. 178, p. 1.

[31]Government's MSJ, Docket Entry No. 181.

[32]Id. at 19.

whether defense counsel represented that the Government had agreed to a below-Guidelines sentence.[33]

## II. Legal Standard

### A. Title 28 U.S.C. § 2255

Title 28 U.S.C. § 2255(a) states that a prisoner in custody under sentence of a federal court may move that court "to vacate, set aside or correct the sentence" "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." "A defendant can challenge a final conviction, but only on issues of constitutional or jurisdictional magnitude." United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001). "[A]fter a conviction and exhaustion or waiver of any right to appeal, [the Court] is entitled to presume that the defendant stands fairly and finally convicted." Id. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 102 S. Ct. 1584, 1593 (1982).

"Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." United States v. Sanderson, 595 F.2d 1021, 1021 (5th Cir. 1979). "'[S]olemn declarations in open court carry a strong presumption of

---

[33]Motion in Traverse to Government's Response and Motion for Summary Judgment ("Petitioner's MSJ Response"), Docket Entry No. 182, p. 2.

verity[.]'" United States v. McKnight, 570 F.3d 641, 649 (5th Cir. 2009). "Nevertheless, a defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations she made in open court when entering her guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).

A court must grant an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Fifth Circuit has held that a § 2255 evidentiary hearing is required only if a petitioner produces "independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties." Cervantes, 132 F.3d at 1110; United States v. McDaniels, 907 F.3d 366, 370 (5th Cir. 2018). "If, however, the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." Cervantes, 132 F.3d at 1110.

B.  **Ineffective Assistance of Counsel**

"'[A] claim for ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of

constitutional magnitude and, as a general rule, cannot be raised on direct appeal.'" United States v. Conley, 349 F.3d 837, 839 n.1 (5th Cir. 2003). To prevail on an ineffective assistance of counsel claim, a convicted defendant must show (1) that defense counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). A counsel's performance is deficient if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 106 S. Ct. 366, 369 (1985). "Where defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, we have further stated that the issue is whether the defendant was aware of [the] actual sentencing possibilities[.]" Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992) (internal quotation marks omitted).

To show prejudice in the guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 106 S. Ct. at 370. "It is

settled law that 'a guilty plea may be invalid if induced by defense counsel's unkept promises.'" United States v. Perez, 227 F. App'x 357, 359 (5th Cir. 2007) (per curiam) (quoting Cervantes, 132 F.3d at 1110). But a court's plea colloquy may cure prejudice by correcting counsel's mistaken advice. See Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999) ("Even under the assumption that Ramos has established deficient performance, he cannot establish that this alleged promise by [counsel] caused him prejudice. This court has held that when a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice when the court specifically informed him that his counsel's advice was incorrect.").[34]

### III. Analysis

**A.   Whether Petitioner Has Presented Sufficient Evidence of Deficient Performance to Warrant an Evidentiary Hearing**

Petitioner alleges that counsel communicated a promise of a 7-9-year prison sentence. Moreover, Zastrow's Aff. is consistent with Petitioner's allegation.[35] But Petitioner's allegation is

---

[34]See also Barker v. United States, 7 F.3d 629, 633 (7th Cir. 1993) ("In this case, even if advice from Mr. Barker's trial attorney had led to his misunderstanding of the consequences of his guilty plea, any such confusion was cured by the trial court. The court conducted a thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on Mr. Barker's part before the plea was accepted."); Ventura, 957 F.2d at 1058.

[35]Zastrow's Aff., Exhibit 2 to Petitioner's § 2255 Brief, Docket Entry No. 171, p. 23 ¶ 2.

"inconsistent with the bulk of [Petitioner's] conduct" and the totality of the evidence. <u>Cervantes,</u> 132 F.3d at 1110. First, Petitioner signed a Plea Agreement that states (1) that the punishment range was 10 years to life imprisonment, (2) that the Government had complete discretion in deciding wether to file a motion for downward departure, and (3) that the court would ultimately decide his sentence.[36] Petitioner reviewed the Plea Agreement before and during rearraignment with defense counsel.[37] Second, Petitioner confirmed to the court at his rearraignment that nobody told him what sentence he would receive and that the Government had made no promises other than those stated in the written Plea Agreement. Third, DeGeurin Jr.'s Aff. states that neither of the DeGeurins promised Petitioner or Ms. Zastrow that Petitioner would receive a particular sentence. Instead, counsel states that the DeGeurins advised Petitioner that the Government had promised to file a 5K1.1 in exchange for Petitioner's plea and cooperation and that the Government would "consider" requesting a further departure via a Rule 35 Motion if Onyema was brought back and prosecuted.[38] Because Petitioner's allegation is flatly refuted by the Plea Agreement he signed, his sworn testimony at

---

[36]Plea Agreement, Docket Entry No. 102, p. 1 ¶ 2, p. 3 ¶ 5, pp. 5-6 ¶ 10.

[37]Rearraignment Transcript, Docket Entry No. 160, p. 10 lines 10-17.

[38]DeGeurin Jr.'s Aff., Docket Entry No. 178, p. 1.

rearraignment, and DeGeurin Jr.'s Aff., the court concludes that Petitioner has not presented sufficient evidence to warrant an evidentiary hearing about the DeGeurins' alleged promise.

### B. Whether Petitioner Can Establish Prejudice

Even if (contrary to the court's conclusion above) the DeGeurins had promised that Petitioner would receive a sentence of 7-9 years, Petitioner would have to show that this deficient performance caused prejudice. Specifically, Petitioner must show that he would not have pleaded guilty and would have insisted on proceeding to trial. Hill, 106 S. Ct. at 370.

Any misconception Petitioner had regarding the possible sentence was dispelled by the court's warnings at rearraignment. The court confirmed the Plea Agreement's statement that the statutory minimum sentence was 10 years, that Petitioner would have no recourse if the Government declined to file a motion for downward departure, and that the court would determine the appropriate sentence. The court admonished Petitioner that nobody could know what guidelines range the court would find applicable or what sentence the court would impose. Therefore, whatever Petitioner understood going into his rearraignment, the court's colloquy made clear that neither the Government nor defense counsel had the ability to ensure a sentence of 7-9 years and that any sentencing calculation was merely an unenforceable estimate. Even

after the court's colloquy dispelled any incorrect advice from defense counsel regarding the possible sentence, Petitioner chose to plead guilty. Petitioner therefore cannot show that he would not have pleaded guilty but for defense counsel's alleged promise, and he cannot establish prejudice as required by Strickland. See Hill, 106 S. Ct. at 370. Because Petitioner cannot establish deficient performance and prejudice, his ineffective assistance of counsel claim fails.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue unless that applicant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under that controlling standard a petitioner is required to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement

to proceed further." Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003) (internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). The court concludes that reasonable jurists could not find any of Petitioner's claims meritorious, so a certificate of appealability will be denied.

## V.   Conclusion and Order

Petitioner's claim that defense counsel and/or the Government promised him a sentence of 7-9 years is refuted by the record and inadequately supported. Moreover, Petitioner cannot establish prejudice because the court's plea colloquy made clear that neither the Government nor defense counsel had the authority to make such a promise. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Docket Entry No. 170) is therefore **DENIED**, and the United States' Motion for Summary Judgment (Docket Entry No. 181) is **GRANTED**. Petitioner's request for evidentiary hearings is **DENIED**. Because the court concludes that reasonable jurists could not find any of Petitioner's claims meritorious, a certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 12th day of February, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE